UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| PENNY L. MORGAN, | ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) | No. 2:14-cv-00140-DBH |
| CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) ) ) | |
| Defendant | ) ) | |

**RECOMMENDED DECISION**[1]

Plaintiff Penny L. Morgan seeks disability insurance benefits under Title II of the Social Security Act. Upon review of Plaintiff's application, Defendant Commissioner found that Plaintiff has severe impairments, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

As explained below, following a review of the record, and after consideration of the parties' written and oral arguments, the recommendation is that the Court affirm the administrative decision.

**THE ADMINISTRATIVE FINDINGS**

Defendant's final decision is the November 19, 2012, decision of the Administrative Law Judge (ALJ) (ECF No. 15-2).[2] The ALJ's decision tracks the five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. § 404.1520.

---

[1] The Court referred the matter for report and recommended decision.

[2] The Appeals Council declined to review the ALJ's decision.

The ALJ found, and Plaintiff does not dispute in this action, that Plaintiff suffers from depression, anxiety, and substance addiction disorder in apparent remission, and that her qualification for disability benefits depends on the degree to which nonexertional mental limitations impede Plaintiff's ability to engage in substantial gainful activity.

The ALJ concluded that Plaintiff has the residual functional capacity (RFC) to engage consistently in full-time work that involves simple-to-moderately detailed instructions, simple-to-moderately detailed tasks, ordinary interaction with coworkers and supervisors, superficial interaction with the general public, and occasional changes in routine. Although the RFC finding would not permit Plaintiff to return to her past relevant work as a nurse, based exclusively on section 204.00 of the Guidelines, the ALJ summarily found that Plaintiff could make an adjustment to other work. The ALJ, therefore, determined that Plaintiff was not disabled from the date of alleged onset through the date of the decision.

## STANDARD OF REVIEW

A court must affirm the administrative decision provided that the ALJ applied the correct legal standards and provided the decision is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**DISCUSSION**

Plaintiff argues that the ALJ erred when he rejected certain expert findings that Plaintiff suffers from marked social limitation that interferes not only with her ability to interact with the public, but also with her ability to interact with coworkers and supervisors. Additionally, Plaintiff argues that even if the ALJ's RFC assessment is supported by substantial evidence, the ALJ erred when he made his step 5 finding based exclusively on an application of the Guidelines, and without soliciting any evidence from a vocational expert.

**A.      Assignment of Weight to Medical Expert Opinion**

In support of her claim of error, Plaintiff notes that both the Disability Determination Services consultants[3] and Plaintiff's longtime treating source (Ex. 21F) found a degree of limitation in social functioning greater than the ALJ's assessment. (Statement of Errors at 3.) Defendant acknowledges that the ALJ "deviated slightly from the opinions of Dr. Stahl and Dr. Houston," who found Plaintiff could not work with the public. (Response at 2.) According to Defendant, when the ALJ determined that Plaintiff can tolerate "superficial" interaction with the public, he simply made a commonsense functional capacity assessment based on Plaintiff's actual work experience with the public, which experience includes the ownership and part-time operation of a café with her daughter. (*Id.* at 3.) With respect to the capacity to work with coworkers and supervisors, Defendant notes, *inter alia*, that the medical consultants agreed with the ALJ. (*Id.* at 8.)

   *1. Public interaction*

In effect, the parties dispute the functional difference between an RFC allowing for no

---

[3] Disability Determination Explanation, Brian Stahl, Ph.D., Ex. 1A, PageID # 94 ("She is not able to work with the public ….."); Disability Determination Explanation, Reconsideration, Benjamin Weinberg, M.D., Ex. 4A, PageID # 109 ("MRFC is simple, no public."). Exhibit 4A reflects that David R. Houston, Ph.D., performed the psychiatric review technique only. (PageID # 105.)

public interaction and one that permits superficial public interaction. Although the vocational relevance of this distinction is not apparent from the record, as explained below in the discussion of the ALJ's application of the Guidelines, the ALJ's reliance on the Guidelines would have been appropriate even if he had found that Plaintiff is unable to have any interaction with the public.[4]

### 2. *Coworker and supervisor interaction*

Plaintiff also maintains that the record compels a finding that she is limited in her ability to interact with coworkers and respond appropriately to usual work situations (Statement of Errors at 3-4), as found by Plaintiff's treating source, Dr. Shirley Fredricks (Ex. 21F, PageID # 489). Contrary to Plaintiff's argument, however, the ALJ's decision to reject Dr. Fredricks's opinion, or to afford it little weight, is supported by substantial evidence on the record. The ALJ specifically found that Dr. Fredricks's opinion was inconsistent with Plaintiff's lack of treatment and activity level. In particular, the ALJ noted that Plaintiff (a) was not treating with a psychiatrist or therapist, (b) was engaged in the business of operating a café, (c) interacts with neighbors, (d) attends support groups, and (e) reported that she had never been dismissed from employment due to an inability to get along with others (Plaintiff has past relevant work as a nurse). (R. 18-19, 21-22.) Furthermore, the ALJ's assessment is in accord with assessments of the Maine Disability Determination Services consulting experts, who found that Plaintiff is capable of social interaction with coworkers and supervisors. In short, the facts cited by the ALJ constitute "good reasons"[5] for the weight that the ALJ afforded the opinion of the treating source, and the assessment of

---

[4] An ALJ's RFC findings should have support in the expert opinions of record, unless the degree of limitation would be obvious to a layperson as a matter of common sense. *Gordils v. Sec'y of HHS*, 921 F.2d 327, 329 (1st Cir. 1990). Because the distinction between superficial public interaction and no public interaction ultimately is not essential to the guidelines analysis, it is not necessary to assess whether the ALJ's finding that Plaintiff has a capacity for superficial interaction with the public, rather than no interaction with the public, is supported on the record.

[5] The ALJ was required to give "good reasons" for the weight assigned to treating source opinion. 20 C.F.R. § 404.1527(c)(2).

Plaintiff's ability to interact with coworkers and supervisors is otherwise supported by substantial evidence on the record.

**B.     Exclusive Reliance on the Guidelines at Step 5**

At step 5 of the evaluation process, the burden shifted to Defendant to establish that jobs exist in the national economy in significant numbers that Plaintiff could perform, giving particular attention to the claimant's age, education, work experience, and residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4)(v), (g)(1); *Goodermote v. Sec'y of HHS,* 690 F.2d 5, 7 (1st Cir. 1982). When nonexertional impairments are established, the burden is typically addressed through a combined reliance on the Medical – Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, and the testimony of a vocational expert. *Goodermote,* 690 F.2d at 7. However, "[i]f a non-strength impairment, even though considered significant, has the effect only of reducing that occupational base marginally, the Grid remains highly relevant and can be relied on exclusively to yield a finding as to disability." *Ortiz v. Sec'y of HHS,* 890 F.2d 520, 524 (1st Cir. 1989).[6]

In this case, the ALJ concluded that Plaintiff's RFC includes the capacity for work at all levels of exertion, and thus the availability of jobs is assessed through section 204.00 of the Guidelines. (R. 24-25.) Section 204.00 applies to individuals with a maximum capacity for heavy work, and provides that the occupational base is in excess of the considerable occupational base available to those with a capacity limited to medium or less physically demanding work.

The issue is the extent to which Plaintiff's particular nonexertional limitations (and other vocational factors) erode the occupational base; *i.e.,* "how much the individual's work capability is further diminished in terms of any types of jobs within these exertional ranges that would be

---

[6] Because the Guidelines are based on a claimant's exertional capacity, they "can only be applied when claimant's nonexertional limitations do not significantly impair claimant's ability to perform at a given exertional level." *Rose v. Shalala,* 34 F.3d 13, 19 (1st Cir. 1994).

contraindicated by the additional limitations or restrictions." *Titles II & XVI: Capability to Do Other Work—The Medical–Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments,* SSR 85–15 (S.S.A. 1985).  If the degree of erosion of the occupational base can fairly be regarded as insignificant, Defendant could reasonably take "official notice," *Geoffroy v. Sec'y of HHS*, 663 F.2d 315, 318 (1st Cir. 1981), that jobs exist in significant numbers in the national economy, without calling upon a vocational expert to supply testimony to that effect.  *See also Ortiz*, 890 F.2d at 524 ("[S]hould a nonexertional limitation be found to impose no significant restriction on the range of work a claimant is exertionally able to perform, reliance on the Grid remains appropriate.").  In particular, in *Garcia-Martinez v. Barnhart*, 111 Fed. App'x 22, 23 (1st Cir. 2004), the case cited by the ALJ, the First Circuit held in a per curiam, unpublished opinion that the Commissioner permissibly relied on the Guidelines to satisfy the burden of proving the existence of work in the national economy where the claimant was found capable of routine, repetitive work that did not involve undue pressure or public interaction.

      The ALJ's step 5 decision involved an assessment that Plaintiff would be able to make an adjustment to work involving simple-to-moderately detailed tasks, ordinary interaction with coworkers and supervisors, superficial interaction with the public, and occasional adjustments in routine.  Based on the ALJ's RFC finding, which is supported by substantial evidence on the record, exclusive reliance on the Guidelines is permitted.  Indeed, the ALJ could rely on the Guidelines even if Plaintiff's RFC ruled out public interaction altogether.  *Swormstedt v. Colvin*, No. 2:13-CV-00079-JAW, 2014 WL 1513347, at *6 (D. Me. Apr. 16, 2014) (citing *Garcia-Martinez*, 111 Fed. App'x at 23).[7]  Accordingly, the ALJ did not err when he relied on the

---

[7] Because the ALJ could rely on the Guidelines if Plaintiff's RFC provided for no interaction with the public, rather than superficial interaction with the public as the ALJ concluded, even if Plaintiff prevailed on her argument that the ALJ erred when he concluded that Plaintiff had the ability to superficially interact with the public, any error would be harmless.

Guidelines to determine the number of jobs available in the national economy.

## CONCLUSION

Based on the foregoing analysis, I recommend that the Court affirm the administrative decision.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 2nd day of July, 2015.